UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 98-11115

GLENDA MERSCH,

Plaintiff-Appellee

v.

CITY OF DALLAS TEXAS; ET AL

Defendants

ANDREW KLEIN; RAYMOND DETHLOFF

Defendants-Appellants

Appeal from the United States District Court for the
Northern District of Texas

March 21, 2000

Before JONES, BARKSDALE and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this §1983 excessive force case, the question of
qualified immunity hinges on whether a plaintiff's hypnotically-
refreshed testimony is admissible to prove that two arresting police
officers assaulted her. The magistrate judge admitted the testimony
for summary judgment purposes, leading him to deny qualified
immunity. Because this testimony was uncorroborated and was based
on a hypnotic procedure lacking recognized safeguards, we conclude

that the magistrate judge abused his discretion in admitting it. Absent any other evidence to prove that an assault occurred, the plaintiff's case fails, and the officers should have received immunity.

## FACTS AND PROCEDURAL HISTORY

At about noon on September 9, 1994, Dallas police officers were summoned to a disturbance involving Mersch, James Gregory Brown, and a neighbor of Mersch's. Mersch and Brown had just come from a bar, where Mersch admitted to having drunk six to eight beers. While walking from the bar to Mersch's nearby apartment complex, Brown got into an argument with a neighbor across a fence. When Mersch attempted to climb the fence separating Brown and the neighbor, she fell about three feet down and landed on her buttocks.

Several witnesses observed the incident. One saw Brown being rough and verbally abusive towards Mersch. The witnesses also reported that Mersch was falling to the ground and unable to maintain her balance. Her stockings were torn and she had abrasions on her knees.

After the police and an ambulance arrived, Mersch was cited for public intoxication, and she and Brown were taken off in separate police cars. Mersch and the arresting officers, Dethloff and Klein, differ as to what happened next. According to the police officers, they drove Mersch straight to the detox center. There,

2

while the officers were momentarily distracted, Mersch fell into a door and hit her head as she attempted to walk unassisted up a handicapped ramp. The officers summoned emergency personnel, who treated Mersch's forehead bump. Mersch was then admitted to the detox center and the officers left. Post-hypnosis, Mersch states, however, that one of the officers jabbed her twice in the abdomen with a flashlight or a nightstick during the ride to the detox center. Then the officers stopped the vehicle, yanked her out, and struck her on the top of the head. Knocked unconscious, she revived lying face down on asphalt with a throbbing head and blurred vision. She looked up and saw three or four officers standing around, and someone in a white uniform shirt with blue letters on it sitting on a short fence. At this point, she was put back in the police car and driven to the detox center. She has no memory of being treated by emergency personnel there.

At the detox center, Mersch complained of stomach pains and blood in her urine. Late that evening, she was transported to a hospital and treated for a ruptured bladder.

Mersch did not initially accuse the police officers of beating her. In her deposition, she stated that when her sister visited her in the hospital, her sister was suspicious that the police had caused Mersch's injuries. Mersch further stated that although she was suspicious of the police officers before hypnosis,

3

she had no grounds for her suspicions other than the fact that she had been in the custody of the police. Mersch and her sister continued to discuss their suspicions of the police officers after she went home from the hospital.[1]

Mersch visited Dr. Weiss, a licensed psychologist, to undergo hypnotism as suggested by her attorney. During two sessions, she "remembered" the alleged assault described above. At her deposition, she testified that prior to undergoing hypnosis she did not remember being beaten by the police officers. The hypnosis was recorded on audiotape, but the tape has been misplaced and was never made available to defendants' counsel or the court.

Mersch filed suit against the City of Dallas, Police Chief Ben Click, and officers Klein and Dethloff, alleging the use of excessive force. The magistrate judge granted summary judgment to the City of Dallas and Police Chief Click, but denied Klein and Dethloff's summary judgment motion after approving the admission of Mersch's post-hypnosis testimony. This interlocutory appeal ensued.

**JURISDICTION**

Mersch argues that this Court lacks jurisdiction because whether the hypnotically-enhanced evidence is admissible is not a

---

[1] In December 1994, Mersch reported to an investigating officer that she had been assaulted from behind by an unknown suspect on September 9. At that time, she did not state that she had been assaulted by police. She told the responding officer that she made the report in order to receive money from a state-sponsored Victim's Compensation fund.

4

pure question of law, but rather concerns the sufficiency of the evidence, an issue not cognizable on interlocutory appeal. This reasoning is incorrect.

Interlocutory orders denying summary judgment on the basis of qualified immunity are immediately appealable when they concern a conclusion of law. *See* <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Such orders are not immediately appealable if they are based merely on sufficiency of the evidence, s*ee* <u>Johnson v. Jones</u>, 515 U.S. 304, 313, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995). Nonetheless, a question of law may be presented despite the existence of a genuine, but subsidiary, issue of material fact. *See* <u>Behrens v. Pelletier</u>, 516 U.S. 299, 312, 313, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996).

In this case, before reaching the question whether a fact issue exists, we must ascertain whether Mersch's post-hypnosis testimony embodies admissible facts at all. This is because Rule 56 states that a court may consider only admissible evidence in ruling on a summary judgment motion. Fed. R. Civ. Proc. 56; *see* <u>Stults v. Conoco, Inc.</u>, 76 F.3d 651, 654 - 55 (5th Cir. 1996). Where, as here, the admissibility of particular evidence is critical to a summary judgment founded on qualified immunity, this court has not hesitated to review the admissibility of the evidence on appeal.

5

*See* <u>Hayter v. City of Mount Vernon</u>, 154 F.3d 269, 274 (5th Cir. 1998).

## MERSCH'S POST-HYPNOTIC STATEMENTS

Mersch's post-hypnotic testimony is the only evidence that implicates the police officers in her injuries. It is undisputed that before she was hypnotized, Mersch had no recollection of being jabbed in the abdomen or struck in the head by the officers. On the other hand, she and her sister had discussed the possibility of such an assault and she had seen the arrest report which named officers Dethloff and Klein, though she had no independent prehypnotic memory of their names. We review the admissibility of Mersch's testimony for manifest error. *See* <u>Hayter</u>, 154 F.3d at 273-74.

Although this Court has dealt with the admissibility of hypnotically-enhanced testimony in the criminal context, it has not done so in a civil case. While constitutional safeguards applicable to criminal cases may suggest extra caution when hypnotically-enhanced evidence is offered by the prosecution, there is no other reason why the analyses should substantially differ, and other courts have adopted a consistent approach to both civil and criminal cases. This court will be guided by our earlier cases.

Hypnotically-enhanced testimony is not per se inadmissible in the Fifth Circuit. *See* <u>Wicker v. McCotter</u>, 783 F.2d 487, 492

6

(5th Cir. 1986).[2]   Rather, courts in this Circuit evaluate such testimony on a case-by-case basis, weighing the probative value of the testimony against its possible prejudicial effect.  *See id.* This approach requires consideration of a number of factors, including whether: 1) the hypnosis is done by a psychologist or psychiatrist trained in its use and independent of either party; 2) the hypnosis is done in a neutral setting with only the hypnotist and the subject present; 3) an audio or video recording is made of all interrogations before, during and after hypnosis; 4) corroborating evidence exists; and 5) the pre-hypnosis and post-hypnosis statements substantially correspond.  *See* Rock v. Arkansas, 483 U.S. 44, 60 - 61, 107 S.Ct. 2704, 2713 - 2714, 97 L.Ed.2d 37 (1987); White v. Ieyoub, 25 F.3d 245, 247 - 248 (5th Cir. 1994).

This Court has, however, identified one situation where hypnotically-enhanced testimony is per se inadmissible.  In United States v. Valdez, a Texas Ranger participating in surveillance to

---

[2]     Courts have been cautious of hypnotically-enhanced testimony because of the tendency of hypnosis to create inaccurate memories.  Three characteristics of hypnosis cause this risk.  First, the subject becomes highly "suggestible", easily susceptible to cues from the hypnotist.  Second, the subject is more likely to "confabulate", i.e., draw on the imagination to round out an incomplete memory. Third, the subject's memory becomes "hardened", increasing the subject's confidence in both true and false memories and thus making cross-examination less effective.  *See* Rock v. Arkansas, 483 U.S. 44, 59-60, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (*citing* M. Orne et al., *Hypnotically Induced Testimony*, *in* Eyewitness Testimony: Psychological Perspectives 171 (G.Wells & E. Loftus, eds., 1984) and Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness*, 68 Calif.L.Rev. 313, 333-342 (1980)).  Courts around the country accordingly differ on the standards of admissibility.  *See* discussion in Borawick v. Shay, 68 F.3d 597, 604-606 (2d. Cir. 1995).

7

investigate an extortion attempt witnessed a man approach the money-drop area and then turn away. He was later unable to identify the man in a lineup. The Ranger knew that Valdez was the prime suspect in the investigation. After undergoing hypnosis, the Ranger identified the man he had seen as Valdez. There was no other corroboration for the identification of Valdez at the drop site. *See* United States v. Valdez, 722 F.2d 1196, 1197 - 1198 (5th Cir. 1984). This Court held that "when ... a hypnotized subject identifies for the first time a person he has reason to know is already under suspicion, the post-hypnotic testimony is inadmissible whatever procedural safeguards were used to attempt to sanitize the hypnotic session." United States v. Valdez, 722 F.2d at 1203.

Mersch's case appears to fit squarely within the holding of Valdez. Mersch knew that her sister suspected the police officers of being responsible for Mersch's injuries. She also admitted in her deposition that, pre-hypnosis, her own suspicions of the police officers were based on the fact that she had been in their custody rather than on any concrete memory of an assault. Like the Ranger in Valdez, Mersch had a suspicion but no direct evidence to substantiate her suspicion. Under such circumstances,

8

as we recognized in <u>Valdez</u>, hypnotically-enhanced testimony is so unreliable as to be more prejudicial than probative.[3]

Even if <u>Valdez</u> is somehow distinguishable from this case, Mersch's testimony would still be inadmissible under the totality of the circumstances test. Mersch neglected to provide the trial court with rudimentary information to support the objectivity and lack of suggestion at her hypnosis sessions. For example, she did not establish whether Dr. Weiss had any training in hypnotism or how much he knew about the case before he hypnotized Mersch. Moreover, those factors on which she provided information point against admission. No recording of the session can be produced; there is no corroborating evidence; and Mersch's statements about the events before and after hypnosis are quite different. Given these indicia of unreliability and the dearth of evidence of procedural safeguards, the totality of the circumstances weighs strongly against admission of the post-hypnotic testimony.

The Second and the Eighth Circuits employ a similar totality of the circumstances test for determining the admissibility of hypnotically-enhanced testimony in civil suits. *See* <u>Borawick v.</u>

---

[3] The magistrate judge held that <u>Valdez</u> was inapplicable, reasoning that Mersch's pre-hypnosis suspicions constituted sufficient pre-hypnosis identification of defendants to avoid the <u>Valdez</u> rule. Mersch's suspicions – which she admitted were not grounded in any independent memory of the event – cannot be considered a pre-hypnosis identification under <u>Valdez</u>. On the contrary, her suspicions, drawn from the sheer fact of injury and having been in police custody, are exactly the kind of prior suspicions that <u>Valdez</u> was concerned about.

<u>Shay</u>, 68 F.3d 597, 608 - 609 (2d Cir. 1995); <u>Sprynczynatyk v.</u> <u>General Motors Corp</u>., 771 F.2d 1112, 1119 - 1124 (8th Cir. 1985). In addition, both circuits impose on the proponent of the hypnotically-enhanced testimony the burden of proof during the proceeding and recommend that district courts conduct pretrial evidentiary hearings on the matter. *See* <u>Borawick</u>, 68 F.3d at 608 - 609; <u>Sprynczynatyk</u>, 771 F.2d at 1122 - 1123.[4]

We find these cases persuasive and concur in their approach. If requested, the district court should hold a hearing when a case presents a significant issue concerning hypnotically-enhanced testimony. Such a hearing would have better enabled the parties in this case to air their positions on admissibility. Alternatively, in a case proceeding toward trial, the often complex determination about the admissibility of such testimony can be made on an evidentiary record compiled without the distraction and haste that may occur before and during trial.

Whether considered under <u>Valdez</u> or the totality of the circumstances, Mersch's post-hypnosis testimony should not have been

---

[4]    In <u>White v. Ieyoub</u>, this Court stated that "the court should determine whether the defendant has shown, from the totality of the circumstances, that the post-hypnosis testimony is unreliable." <u>White v. Ieyoub</u>, 25 F.3d at 248 - 249. <u>White</u> arose, however, in the habeas context, where the petitioner bears the burden of showing constitutional error. In the ordinary civil or criminal case, the proponent of hypnotically-enhanced testimony bears the burden of showing it is admissible.

10

admitted.  The magistrate judge committed manifest error in admitting it.

## CONCLUSION

The police officers have established that there is no genuine issue of material fact, and they are entitled to judgment as a matter of law upholding their qualified immunity.  The only evidence of their alleged excessive force was Mersch's inadmissible post-hypnosis testimony.  Without that testimony, she has no case.  For these reasons, we REVERSE the district court and RENDER judgment in favor of the defendants.

**REVERSED** and **RENDERED.**

11