# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30027

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2015

Lyle W. Cayce
Clerk

COLLEEN CURRAN, Individually; APRIL CURRAN,

      Plaintiffs - Appellees

v.

PHILLIP ALESHIRE; RODNEY JACK STRAIN, Individually and in his official capacity as St. Tammany Parish Sheriff,

      Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-2993

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:\*

Nearly seven years ago, sheriff's deputy Phillip Aleshire confronted high school sophomore April Curran over her violation of a school rule banning cell phones on campus. Their interaction lasted only ten minutes. But it was long enough to saddle Curran with a juvenile record for battery of an officer, and Aleshire with a federal lawsuit for violating Curran's constitutional rights.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30027

This appeal arises from the federal civil rights case. Aleshire moved for summary judgment, in part on the basis of qualified immunity. The district court ruled that fact issues precluded summary judgment on the excessive force claims, and Aleshire filed this interlocutory appeal. Because our jurisdiction in such an interlocutory appeal is limited to reviewing the materiality of any factual disputes found by the district court and not whether those disputes exist, we dismiss the appeal for lack of jurisdiction.

I.

In the fall of 2008, Curran was a 15-year-old sophomore at Fontainebleau High School in Mandeville, Louisiana. She took classes at Fontainebleau in the morning, and classes at the New Orleans Center for Creative Arts (NOCCA) in the afternoon.

On September 24, 2008, Curran missed her mid-day bus to NOCCA. She used her cell phone to call her mother while still on school grounds. School policy prohibited student use of cell phones on school property.

A teacher—Leonard Abram—saw Curran on her phone. He told her that she needed to give him the phone or go to the disciplinarian's office. Curran refused to give him the phone. She told him that she needed to leave campus to go to NOCCA.

Abram then called over Aleshire, a deputy with the St. Tammany Parish Sheriff's Office and Fontainebleau's school resource officer, to assist. At this point, the sequence of events becomes less clear.

According to Curran, Abram told Aleshire that she was trying to escape. Although both men had been given her name, Aleshire began grabbing for her student ID card, which was hanging on a lanyard around her neck. She claims that he yanked her head and neck when he pulled at her ID, causing her to reflexively "jerk[] back." ROA 373-74. Aleshire then "threw" her against a wall—allegedly headfirst—and handcuffed her. ROA 374.

2

No. 15-30027

Aleshire and Abram tell a different story. They report that Curran began to fight Aleshire when he reached for her ID, first smacking his hand away and then—when he continued to grab for the ID—striking him across the head hard enough to knock off his glasses and radio. Although Curran was "thrashing around and trying to get away," Aleshire was eventually able to "secure one of her arms and spin her around against the auditorium wall." ROA 300.

Once Curran was handcuffed, Aleshire and Abram walked her toward the disciplinarian's office. During the walk, Aleshire "slammed" Curran into a wall, hard enough to dislodge the cell phone which she had hidden in her shirt. ROA 498. She contends that she was cooperating and had done nothing to provoke being pushed into a wall. Aleshire disagrees, stating that Curran had attempted to free herself and that he "plac[ed] her against the hallway wall" in order to regain control. ROA 300. Surveillance cameras recorded at least part of this second use of force.

Aleshire then delivered Curran to the disciplinarian's office, where she waited for several hours until her mother arrived. After speaking with school officials and photographing Curran's injuries, her mother took her to a nearby hospital for treatment. Curran's physical injuries from the encounter with Aleshire included bruising on the back of her head and bruising on her arms and wrists.

Many hours after the incident, while Curran was still at the hospital with her mother, Aleshire arrested her for battery of an officer. She was tried in juvenile court and found guilty. The conviction is now final.

3

No. 15-30027

II.

Before completion of the criminal case, Curran and her mother[1] sued Aleshire and other St. Tammany Parish officials and entities[2] for injuries stemming from the September 24th encounter. Curran asserted ten federal and state law claims against Aleshire. Although the complaint did not use the phrase "excessive force," she later clarified—and the district court accepted— that her claims of battery, assault, cruel treatment, and unlawful search and seizure were excessive force claims under both state tort law and federal constitutional law. Because the validity of Curran's conviction for battery might have affected the merits of at least some of her claims, the district court stayed the case while she unsuccessfully appealed her conviction.

When this federal case resumed, Aleshire moved for summary judgment on all of Curran's claims. Although it granted the motion on most of the claims, the district court denied summary judgment to Aleshire on (1) the Section 1983 excessive force claims, (2) the parallel state law claims of excessive force and battery and assault,[3] and (3) punitive damages.

As to the excessive force claims under federal law, the district court rejected Aleshire's arguments that the claims were foreclosed by *Heck v. Humphrey*, 512 U.S. 477 (1994). Even if the state criminal proceeding established for purposes of this federal civil case that Curran struck Aleshire (an issue on which we express no opinion for lack of jurisdiction), the district

---

[1] Curran's claims were originally brought by her mother due to Curran's age. Curran has since turned 18 and taken over responsibility for her own claims.

[2] These included the St. Tammany Parish Sheriff's Office, the St. Tammany Parish School Board, individuals associated with the Sheriff's Office and School Board, and the principal of Curran's high school. With the exception of the Sheriff's Office, all other defendants remain in the case on state law claims of vicarious liability.

[3] The district court denied summary judgment on the parallel state law claims "[f]or the same reasons that summary judgment is denied as to the excessive force claims under 42 U.S.C. § 1983." ROA 1895. The parallel state law claims are not at issue in this interlocutory appeal.

4

No. 15-30027

court found that a fact issue existed on whether sufficient time had passed between Curran's battery and Aleshire's first use of force to render the latter unreasonable. The district court next found that Curran's alleged injuries were not *de minimis*, although it noted this question was a "close call." ROA 1890-91. The district court then conducted the qualified immunity analysis to assess whether Aleshire violated clearly established law. It concluded that the qualified immunity defense required the resolution of disputed fact issues, a task the district court could not perform on summary judgment. These disputed fact issues included whether Curran was resisting, threatening others, or attempting to escape when Aleshire used force against her. In the context of this interlocutory appeal, Aleshire challenges only the last of these rulings: that Aleshire's qualified immunity defense turns on fact issues which cannot be resolved through summary judgment.[4]

## III.

Aleshire argues that he is entitled to qualified immunity, even assuming the existence of disputed facts, because none is material to whether his actions were objectively unreasonable in light of clearly established law. In other words, Aleshire contends that reasonable officers could disagree about whether the force allegedly used on Curran was lawful under the circumstances suggested by Curran's evidence.

---

[4] In a footnote, Aleshire invites the court to "exercise its ancillary jurisdiction" to review and correct "the district court's error of law" regarding the applicability of the *Heck* doctrine to Curran's excessive force claims. It is not clear that the district court committed any "error of law" regarding *Heck*. It accepted that the battery was established, but found a factual dispute regarding the amount of time between the battery and the first use of use. *See Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) ("[A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."). In any event, Aleshire's fleeting footnote does not properly raise this issue. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (finding issue not "adequately presented" on appeal when the issue was "mentioned in the questions presented and the summary of the argument, but the body of the brief [did] not discuss it in any depth").

The structure of Aleshire's argument is necessitated by the nature of this interlocutory appeal. The court possesses jurisdiction over the district court's summary judgment order—which is not a final decision—"only to the extent that the denial of summary judgment turns on an issue of law." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (internal quotation marks and brackets omitted). The district court's determination that a fact dispute exists is not an issue of law that can be upended through interlocutory appeal. *See id.* at 346–47. As we have put it a number of times, when conducting an interlocutory review of a qualified immunity ruling we "review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir. 2000) (emphasis in original).

Trying to fit his appeal within the confines of our limited review, Aleshire argues that both uses of force against Curran were justified in light of certain undisputed facts. He contends that his first use of force was justified because Curran battered him, and his second use of force was justified because video and photographic evidence show Curran taking a "long stride as if to escape." We will address each use of force separately.

## A.    First Use of Force

Aleshire contends that qualified immunity shields him from liability for his first use of force because he could have reasonably believed it necessary to push Curran against the wall in order to bring her under control after she struck him. That may be true under the deferential qualified immunity standard if his pushing her head into the wall was a split-second response to Curran's battery or continued resistance. While the district court accepted that Curran battered Aleshire, it then found a factual dispute as to timing which, viewed in Curran's favor, takes Aleshire's first use of force outside the context of an immediate and inseparable response to the battery. *See Bush v. Strain*, 513 F.3d 492, 498–502 (5th Cir. 2008) (reversing district court's grant

of summary judgment against a plaintiff convicted of resisting arrest in light of "conflicting evidence about whether [the plaintiff] was injured before or after her resistance had ceased").

Aleshire raises doubts about the evidentiary source for the court's finding that Curran "presented evidence to support that she was not resisting . . . at both times Aleshire applied force." ROA 1894. We are not permitted to assess whether the record supports this finding of a temporal gap, however, as mining the record for evidence to support discrete factual disputes identified by the district court is not a proper task on interlocutory appeal. *See Fuentes v. Riggle*, 2015 WL 2151832, at *5 (5th Cir. May 8, 2015) (per curiam) (officer's argument that the district court should have disregarded deposition testimony which contradicted prior statements to the police "go[es] to the genuineness of the factual dispute, not its materiality").

Accepting this finding of a genuine factual dispute as we must, our role is limited to the following legal question: is the fact dispute material to Aleshire's qualified immunity defense? Put differently, given Curran's actions as characterized by the district court on the basis on the disputed summary judgment record—and how those actions could have been perceived by a reasonable officer in Aleshire's position[5]—did Aleshire violate clearly established law when he slammed her head into a wall?

We have little difficulty answering this proper legal question in the affirmative. A suspect's active resistance is a key factor in the Fourth Amendment's "objective reasonableness" test. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Accordingly, our qualified immunity jurisprudence is filled

---

[5] We judge the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

with cases recognizing the need for officers to use reasonable force to subdue and handcuff suspects who strike them or are otherwise resisting. But we have also recognized that the force calculus changes substantially once that resistance ends. *See Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006) ("[W]e have noted circumstances where a plaintiff's prior conviction is not inconsistent with his claim of excessive force."). An easy case demonstrates this point. It is not reasonable for officers to apply force to a suspect who is handcuffed in a patrol car en route to jail even though that suspect may have battered the officers minutes earlier during a traffic stop. Of course, the temporal and locational distinctions are not as sharp with respect to the first use of force in this case. But we must accept the district court's finding that a factual dispute exists concerning whether Aleshire's first use of force was "conceptually distinct" in timing from Curran's earlier resistance. ROA 1888.

Aleshire's argument cannot get past this limitation on our review. He faults the district court and Curran for failing to identify a case that put him on notice that he could not "forc[e] an individual's head against a wall in order to detain him after he has battered an officer." But if enough time elapsed between the battery and the use of force that a reasonable officer would have realized Curran was no longer resisting, then this may qualify as an "obvious" case in which the *Graham* factors alone can provide fair warning. *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012); *see also Bush*, 513 F.3d at 502 ("While the Fourth Amendment's reasonableness test is 'not capable of precise definition or mechanical application,' the test is clear enough that [the officer] should have known that he could not forcefully slam [the arrestee's] face into a vehicle while she was restrained and subdued.") (footnote omitted) (quoting *Graham*, 490 U.S. at 396). Such a case must truly be obvious, as "'defin[ing] clearly established law at a high level of generality'" risks "avoid[ing] the crucial question whether the official acted reasonably in the particular

No. 15-30027

circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011)).

Curran claims that Aleshire "slammed" her into a wall, hard enough to produce bruising on the back of her head. As noted above, the district court found there was a genuine dispute regarding whether she was resisting at the time—a finding that this court has no jurisdiction to review. And under Curran's and her supporting eyewitness's version of events, no other *Graham* factor is implicated: she was not attempting to flee, Aleshire did not fear for his own safety, and no bystander was endangered by her behavior. The resolution of these factual disputes in Curran's favor would conclusively defeat qualified immunity. ROA 1894 ("Aleshire should have known[] that when one is not resisting arrest, attempting to escape, or otherwise posing a threat at the time of the alleged use of force, 'slamming' one into walls and thereby causing injuries constitutes an excessive use of force.").

Aleshire relies on two cases in which the Fifth Circuit found qualified immunity established on the basis of a disputed summary judgment record: *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) and *Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009).[6] He does not claim that *Poole* is factually similar

---

[6] Aleshire also points to *Fontenot v. Toups* as a case with "strikingly similar facts," in which the district court granted summary judgment on the basis of qualified immunity. *See* No. 2:10-cv-00954, 2011 WL 2214760, at *5 (E.D. La. June 6, 2011). It is true that the set-up of the arrest in *Fontenot* is quite similar: the student's use of a cell phone on school grounds brought her to the attention of school officials and, later, law enforcement. *See id.* at *1. But the force employed in that case was limited to "violent" handcuffing—which is, to say, handcuffing. *Compare id.* at *1 ("Plaintiffs allege that [the student] was handcuffed in a violent manner[.]") *with id.* at *3 ("The parties agree . . . that [the student] was handcuffed by [one officer] while on the ground[.]"). The district court found that "the arrest was not done in an extraordinary manner" and that the force used to handcuff the student was not excessive. *Id.* at *4. By contrast, Curran's arrest may well have been done in an "extraordinary manner." She was not simply handcuffed; she was also "slammed" against a wall. Arrests, especially ones involving unarmed persons, typically do not require slamming the arrestee into a wall. Handcuffing, however, is a ubiquitous practice in performing an arrest, and we have repeatedly stated that handcuffing alone—without more—is not

9

to his encounter with Curran. Instead, he relies on it for the proposition that police officers are afforded considerable latitude in "tense, uncertain, and rapidly evolving" situations. *See Poole*, 691 F.3d at 629 (internal quotation marks and citation omitted). No doubt our case law has repeatedly recognized as much, but the encounter between the plaintiff and law enforcement in *Poole*—a roadside stop in which all of the alleged force by officers occurred while the suspect was still exhibiting resistance, 691 F.3d at 625–26— remained in that "rapidly evolving" state throughout. As found by the district court in this case, there is at least some evidence that all of the challenged force occurred after Curran had stopped resisting. For that reason alone, *Poole* is not controlling.

Unlike *Poole*, *Manis* speaks to the question presented by this appeal: whether disputed issues of fact are material to Aleshire's qualified immunity defense. The court in *Manis* found only two facts material to the officers' decision to use deadly force: that the decedent reached under the seat of his vehicle and that he moved as if he had obtained what he sought. 585 F.3d at 844. Because no evidence in the summary judgment record disputed those facts, qualified immunity applied. *Id.* at 844–47. The court noted a host of other, disputed facts, but concluded that "none . . . bear[s] on whether Manis, in defiance of the officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object that [one officer] reasonably believed to be a weapon." *Id.* at 845. In short, the court was satisfied that two undisputed facts regarding the encounter justified the officers' use of deadly force.[7]

---

constitutionally excessive. *See, e.g., Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) ("This court finds that handcuffing too tightly, without more, does not amount to excessive force.").

[7] *Manis* came to the Fifth Circuit in a different posture than this case. The district court in *Manis* denied summary judgment without identifying the specific fact disputes that precluded qualified immunity. 585 F.3d at 843. Rather than remand for clarification, the

No. 15-30027

Aleshire believes that, like the decedent reaching under the seat in *Manis*, Curran battering him is the only fact material to his first use of force; that the battery conviction alone places his actions in the "hazy border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (internal quotation marks and citation omitted). But the district court found a fact dispute concerning whether the battery and the first use of force were temporally disconnected. No similar fact dispute existed in *Manis*. We cannot assess, given our limited interlocutory review, whether this fact dispute is not *genuine*. And we agree with the district court that the fact dispute is *material*. We therefore find no legal error in the district court's conclusion that slamming a student's head into the wall after her resistance had ceased is a violation of clearly established law. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) ("[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.").

## B.    Second Use of Force

Aleshire raises a narrower challenge to the district court's ruling that fact issues precluded qualified immunity on the second use of force. He does not dispute that Curran's version of events establishes a violation of clearly established law, and with good reason. To recap, the second use of force occurred near the end of a three-minute-long walk from outside the school— where the battery and handcuffing took place—to the disciplinarian's office inside the school. Curran states that she did not struggle, try to get away, or make any sudden movement during the walk. Her description of being gratuitously slammed, while handcuffed, into a wall long after her resistance

---

court "scour[ed] the record and determine[d] what facts the plaintiff may be able to prove at trial" in order to "resolve the legal issues" involved in the interlocutory appeal. *Id.* (internal quotation marks and citation omitted). Because the district court here specifically identified the factual dispute which it believed precluded summary judgment on qualified immunity, we are neither called upon nor empowered to scour the record in search of a different answer.

had ceased would unquestionably constitute excessive force. The district court thus found that the reasonableness of the second use of force turned on whether Curran "was trying to escape or otherwise resist, as is claimed by Aleshire, or if it was an arbitrary use of force, as is claimed by [Curran.]" ROA 1894.

Recognizing that Curran's testimony would establish an excessive force claim, Aleshire instead invites the court to view the video and still pictures and draw its own conclusions about whether Curran exhibited signs of resistance. We are allowed to do so under *Scott v. Harris*, 550 U.S. 372 (2007), which created an unexplained exception to the materiality/genuineness rule cited above. *See Fuentes*, 2015 WL 2151832, at *5 (recognizing the tension between *Scott* and the rule that appeals courts handling qualified immunity interlocutory appeals cannot review the genuineness of a fact dispute). *Scott* instructs that a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is "blatantly contradicted" and "utterly discredited" by video recordings. 550 U.S. at 380–81.

Aleshire argues that the still pictures in particular demonstrate that Curran "suddenly [took] a long stride as if to escape, causing Deputy Aleshire to lean backwards (an unnatural movement) in order to prevent her from escaping." Having viewed the videos and the still pictures, Aleshire's interpretation of the visual evidence is debatable at best. Of eighteen video clips, only two capture portions of the second use of force. The others show nothing more than Aleshire escorting a handcuffed Curran without incident.

The two clips which capture the second use of force do not resolve the parties' dispute. Importantly, Aleshire "slammed" Curran into a wall immediately after they had rounded a corner. This means that one video clip shows them immediately before the use of force, while the other shows them during and after. But there is no single, uninterrupted take of the entire event.

The still pictures emphasized by Aleshire are taken from the first of these two video clips, which he claims show that Curran increased her stride. He argues that he reasonably interpreted the change in her gait as an attempt to escape. But we observe no appreciable difference in the length of Curran's stride between the first frame and the third frame (where she disappears from view). Although the still pictures show Aleshire leaning backwards, Curran is not in view at the time. It is thus impossible to tell whether Aleshire is leaning backwards in response to something Curran has done, or if he is leaning backwards because he is throwing her against the wall.

We therefore agree with the district court that the video and still picture evidence of the second use of force is "inconclusive." ROA 1894. Because the visual evidence does not refute Curran's testimony, we must accept it for purposes of this appeal. And under Curran's version of events, she was handcuffed and subdued when Aleshire pushed her into the wall outside the disciplinarian's office—making this an obvious case of excessive force sufficient to defeat Aleshire's claim of qualified immunity. *See Bush*, 513 F.3d at 501–02 (holding that officer had fair warning "he could not forcefully slam [an arrestee's] face into a vehicle while she was restrained and subdued").

## IV.

Neither Curran's battery conviction nor the photographic and video evidence conclusively resolves the factual disputes identified by the district court in its summary judgment order. These factual disputes are material to Aleshire's qualified immunity defense. Accordingly, we DISMISS the appeal for lack of jurisdiction.