# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 29, 2024

Lyle W. Cayce
Clerk

_____

No. 22-40781

_____

Santos Argueta; Blanca Granado; Dora Argueta; Jelldy
Argueta; The Estate of Luis Fernando Argueta,

*Plaintiffs—Appellees*,

*versus*

Derrick S. Jaradi,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:20-CV-367

_____

ON PETITION FOR REHEARING
AND REHEARING EN BANC

Before Clement, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:

The petition for panel rehearing is DENIED.[1] The petition for
rehearing en banc is DENIED because, at the request of one of its members,

---

[1] Judge Haynes would grant the petition for panel rehearing.

the court was polled, and a majority did not vote in favor of rehearing (FED. R. APP. P. 35 and 5TH CIR. R. 35).

In the en banc poll, seven judges voted in favor of rehearing (STEWART, ELROD, HAYNES, GRAVES, HIGGINSON, DOUGLAS, and RAMIREZ), and ten voted against rehearing (RICHMAN, JONES, SMITH, SOUTHWICK, WILLETT, HO, DUNCAN, ENGELHARDT, OLDHAM, and WILSON).

Jennifer Walker Elrod, *Circuit Judge*, joined by Stewart, Graves, Higginson, and Douglas, *Circuit Judges*, dissenting from denial of rehearing en banc:

This case is about whether an officer is entitled to qualified immunity for shooting a fleeing suspect in the back without warning when that suspect concealed his arm from view such that the officer thought that he *might* be armed. Such are the facts read in the light most favorable to Argueta, the non-moving party. The panel majority answered "yes," overturning the district court's determination that genuine disputes of material fact bearing on qualified immunity remained.

The panel majority relied heavily on our "furtive-gesture" line of cases, which instructs that an officer's use of deadly force is permissible where a suspect appears to reach for what might be a weapon and the officer reasonably believes that a suspect will imminently use violence. *E.g., Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (suspect ignored repeated commands and reached under his seat to grab an object). But as Judge Haynes observed in her dissent from the panel opinion, "each of those cases included 'other factors that led the officer to suspect that the victim would resort to violence.'" *Argueta v. Jaradi*, 86 F.4th 1084, 1094 (5th Cir. 2023) (Haynes, J., dissenting) (quoting *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023)). Here, no such factors were present. Rather, all Argueta did was "clutch[] his right arm to his side as he fled." *See id.* at 1092 (majority opinion).

I agree also with Judge Douglas that the panel majority contravenes our precedent and that of the Supreme Court by failing to draw all inferences in favor of Argueta, the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650 (2014); *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (en banc). And I agree with the able district court, which held that several genuine issues of material

fact precluded granting summary judgment: as to whether Officer Jaradi knew that Argueta was armed, whether Argueta threatened the officers with a weapon, and whether Jaradi gave Argueta any orders or warning before shooting him.

I offer no opinion as to whether Jaradi should have ultimately been entitled to qualified immunity. That question turns on genuine fact disputes that we have no jurisdiction to review in this posture. *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc). The panel majority removed that determination from the hands of the fact finder, in the process effecting— incorrectly, in my view—a sweeping expansion of our furtive-gesture caselaw. I believe that this warranted *en banc* treatment.

DANA M. DOUGLAS, *Circuit Judge*, joined by GRAVES and HIGGINSON, *Circuit Judges*, dissenting from denial of rehearing en banc: [*]

Luis Argueta was a teenager driving from a convenience store with his girlfriend when Officer Jaradi pulled him over.[1]  In a matter of seconds, Argueta took off on foot and Officer Jaradi shot him in the back twice.  Those shots proved fatal, and Argueta's family brought an excessive force claim against Officer Jaradi.  The district court rightfully denied the officer qualified immunity because at least four disputed material facts undermined the reasonableness of his deadly force.  A panel of this court, however, decided those facts were either not in dispute or not material to Fourth Amendment protections and qualified immunity.  *See Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023).  That decision misconstrues the law of this court and the Supreme Court.

"When an officer uses deadly force, that force is considered excessive and unreasonable 'unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)); *see Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Further, 'an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.'" *Roque*, 993 F.3d at 333 (quoting *Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009)).  "Whether an officer's use of force was excessive is 'necessarily a fact-intensive' endeavor that 'depends on the facts and circumstances of each particular case.'"

---

[*] Judge ELROD joins in Parts I and II of this opinion.
[1] It is disputed whether Officer Jaradi, and his partner Officer Larson, had probable cause or reasonable suspicion to conduct a traffic stop. Also, Officers Jaradi and Larson provided conflicting statements of the events leading up to the shooting.

*Barnes v. Felix*, 91 F.4th 393, 400 (5th Cir. 2024) (Higginbotham, J., concurring) (quoting *Amador v. Vasquez*, 961 F.3d 721, 727 (5th Cir. 2020)).

In this case, the district court found four facts at issue, including: (1) whether Officer Jaradi saw that Argueta had a weapon; (2) whether Argueta was running away or toward officers or the public; (3) whether Argueta threatened officers; and (4) whether officers warned Argueta before shooting him.  Each of these facts are material to whether an officer's use of force was excessive.  *See, e.g., Roque*, 993 F.3d at 333.  And nothing in the officers' dash or body camera footage "resolve[s] the parties' dispute." *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015) ("Because the visual evidence does not refute Curran's testimony, we must accept it for purposes of this appeal."); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opinion of the panel was not faithful to the legal standards underlying Argueta's claims.  Specifically, the opinion commits at least three errors. First, it does not view the facts in favor of the non-movant, Argueta, and is based on inferences in favor of Officer Jaradi.  Second, it distorts precedent regarding armed suspects and the summary judgment standard for qualified immunity.  Third, it misconstrues flight risk as a question of law, rather than fact.  For these reasons, I must dissent from denial of rehearing en banc—the only process through which this opinion can be corrected.

## I.

The opinion contravenes *Tolan v. Cotton*, 572 U.S. 650 (2014) and *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (en banc) because it fails to consider the evidence in the light most favorable to the non-movant, Argueta. In *Tolan*, the Supreme Court stated that the Fifth Circuit "failed to view the evidence at summary judgment in the light most favorable to Tolan with respect to central facts of this case." 572 U.S. at 657.  "In failing to credit evidence that contradicted some of its key factual conclusions, the court

improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party." *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)); *see Cole*, 935 F.3d at 452.

Moreover, "'drawing inferences in favor of the nonmovant'" is especially important when determining whether there is clearly established law. *Roque*, 993 F.3d at 335 (quoting *Tolan*, 572 U.S. 650, 657 (2014)). "That's because the Supreme Court has 'instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Id.* (quoting *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010); *see also id.* ("[A] defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity must be prepared to concede the best view of the facts to the plaintiff.")). "'In other words, a court assessing the clearly established law cannot 'resolve disputed issues in favor of the moving party.' And it must 'properly credit' Plaintiffs' evidence." *Id.* (quoting *Tolan*, 572 U.S. at 660).

In this case, the video footage and autopsy report confirm that Argueta was running away. Jaradi's partner, Officer Larson, conceded that he did not know "why" Jaradi shot Argueta. In addition, Jaradi provided conflicting testimony regarding whether he felt Argueta posed a risk or threat. We cannot ignore the long line of cases demonstrating that these facts, among others, are material and preclude summary judgment here. *See, e.g.*, *Cole*, 935 F.3d at 453 (affirming denial of qualified immunity, finding Fourth Amendment violation where, though the suspect held a weapon in his hand, he had not directed it toward the officer when he was shot); *Roque*, 993 F.3d at 335 (affirming denial of qualified immunity, finding Fourth Amendment violations "where a suspect has a weapon but is incapacitated or otherwise incapable of using it (functionally unarmed)"); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 281-82 (5th Cir. 2015) (remanding for consideration of whether the officer's decision to shoot plaintiff "when he

was already on the ground" was entitled to qualified immunity); *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) ("Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer.").

The panel's opinion contravenes these precedents. That reason alone was sufficient to warrant rehearing en banc as the opinion runs afoul of our own rule of orderliness with respect to the above decisions, as well as the Supreme Court's own precedents. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) ("'It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court.'" (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008))).

## II.

Perhaps most egregiously, the opinion concludes that the lack of visibility of Argueta's right arm and hand constituted a "furtive gesture akin to reaching for a waistband." *Argueta*, 86 F.4th at 1092. Such "gesture" is akin to running, as Argueta argues, Jaradi *admits*, and the district court found. The conclusion that Argueta's movements constituted a "furtive gesture" stems from both the panel's substituting its view over the district court's without any clear video evidence, and declining to apply the correct summary judgment standard to the facts. *See Tolan*, 572 U.S. at 651 ("In articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Liberty Lobby*, 477 U.S. at 255)).

To be clear, the furtive-gesture line of cases does not apply here. For example, unlike the plaintiff in *Salazar-Limon*, Argueta presented

"controverting evidence" to rebut Officer Jaradi's testimony. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 278-79 (5th Cir. 2016), *as revised* (June 16, 2016); *see also Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (explaining that "Appellees *do not dispute the only* fact material to whether [the officer] was justified in using deadly force" (emphasis added)). In *Salazar-Limon*, the court explained that the plaintiff "did not deny reaching for his waistband; nor [had] he submitted any other controverting evidence in this regard." *Salazar-Limon*, 826 F.3d at 278-79. If the "furtive gesture" cases are inapposite, almost all of the majority's arguments about the four identified genuine disputes of material fact identified by the district court fall away. *See Argueta*, 86 F.4th at 1092-93.

As JUDGE HAYNES mentioned in her dissent, "the genuinely disputed facts here undermine the objective reasonableness of Officer Jaradi's use of deadly force," even with deference to the higher standard for qualified immunity cases. *Argueta*, 86 F.4th at 1094-95 (Haynes, J., dissenting). For example, whether the officers had reasonable suspicion to stop and detain Argueta is material to the analysis. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (declining to extend qualified immunity to officers in part because material issues remained as to whether the officers had reasonable suspicion to detain suspect or probable cause to arrest him); *see also Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (concluding a minor offense militated against the use of force). Further, the factual dispute concerning Officer Jaradi's warning, or lack thereof, is equally material to the analysis. *See, e.g.*, *Cole*, 935 F.3d at 453 (explaining that disputed material facts regarding whether the officer warned the plaintiff before shooting him precluded qualified immunity).

The opinion held that "no reasonable jury could conclude that Argueta was visibly unarmed—because he was armed. At most, a jury could conclude that Argueta was *apparently* unarmed." *Argueta*, 86 F.4th at 1092.

This pronouncement has no basis in our precedent, and there are no citations in the opinion to support it. In fact, this is an impermissible conclusion to reach under relevant precedent. As we have repeatedly stated: "We only consider the facts 'knowable to the defendant officers' at the time the officers used force." *Roque*, 993 F.3d at 333 (quoting *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019)); *see also White v. Pauly*, 580 U.S. 73, 76-77 (2017) ("Because this case concerns the defense of qualified immunity, however, the Court considers only the facts that were knowable to the defendant officers." (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015))).

Furthermore, despite repeatedly asserting that "not one frame of video evidence presents a clear glimpse of the firearm," and that "the video does not clearly reflect that Argueta showed the gun during his flight," the opinion concluded that these disputes were immaterial. *Argueta*, 86 F.4th at 1090. This contravenes the Supreme Court's mandate to consider the facts knowable to the officers at the time force was used. *Kingsley*, 576 U.S. at 399 ("[W]e have stressed that a court *must* judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." (emphasis added)). The opinion is particularly troubling because it *reversed* a district court's careful conclusion regarding genuinely disputed material facts. As the district court found, however, the officers are not entitled to qualified immunity because nothing in the record "blatantly contradicted" Argueta's version of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.

Finally, the opinion "set aside" the district court's finding that there is a genuine dispute as to "whether Argueta's flight posed any risk to the officers or the public." *Argueta*, 86 F.4th at 1089. It appears that the opinion ignores our deferential standard of review by holding that "whether the suspect's flight posed a threat to the officers or onlookers is a question of law

left to the court." *Id.* at 1092; *see also id.* at 1093 ("We decline to address the genuineness or materiality of this 'fact dispute' because it is actually a question of law."). *But see, e.g., Poole*, 79 F.4th at 460 (explaining that "we decline to disturb the district court's factual determination" because the district court sits as the factfinder). In doing so, the opinion drastically changes the law with respect to excessive force claims.

In *Roque*, two factual disputes on video *prevented* the court from answering whether the officer's force was excessive and objectively unreasonable. *Roque*, 993 F.3d at 333-34 ("Two fact disputes . . . prevent us from answering these questions"). As to whether Roque posed a risk, the court determined that two fact disputes existed, including the placement of Roque's gun and his movements (i.e., whether Roque was incapacitated). Those facts were material to whether the officer's second and third shots were excessive and objectively unreasonable. *Id.* at 334. Because of the disputed facts, and the clearly established law preventing officers from using deadly force after incapacitating an individual, the officer was precluded from qualified immunity. *Id.* at 339. The logic in *Roque* is as follows:

> [O]n interlocutory appeal following the denial of qualified immunity, the scope of our review is limited to whether the factual disputes that the district court identified are material to the application of qualified immunity. Our review therefore involves only whether a given course of conduct would be objectively unreasonable in light of clearly established law. We do not review the district court's determination that there are genuine fact disputes.

*Id.* at 332 (quotation marks and internal citations omitted).

The opinion appears to concede that *Roque* is controlling but contravenes it. *See Argueta*, 86 F.4th at 1093 (citing *Roque*, 993 F.3d at 333). Again, the disputed facts here raise the issue of whether Jaradi's force was

excessive and objectively unreasonable. *See, e.g., Poole*, 13 F.4th at 424 (citing *Roque*, 993 F.3d at 339; *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017)). When a suspect poses no immediate threat to officers or other individuals, "'the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.' *Garner* also requires a warning before deadly force is used 'where feasible,' *a critical component* of risk assessment and de-escalation." *See Cole*, 935 F.3d at 453 (emphasis added) (quoting *Garner*, 471 U.S. at 11-12).

Indeed, whether Argueta posed a risk to the officers or the public is "not only disputed but material to Plaintiffs' Fourth Amendment claim." *Roque*, 993 F.3d at 333-34. And nothing in the video "resolve[s] the parties' dispute." *Curran*, 800 F.3d 656 at 664. Moreover, the opinion narrows the moment-of-threat-analysis despite finding that "a reasonable jury could conclude that Argueta's weapon was not visible to Jaradi before or at the moment he used deadly force." *Argueta*, 86 F.4th at 1090. To the contrary, we must "agree with the district court that the video and still picture evidence of the . . . use of force is 'inconclusive.'" *Curran*, 800 F.3d at 663.

## IV.

In holding that Officer Jaradi was entitled to qualified immunity, the panel "failed to view the evidence at summary judgment in the light most favorable to [Argueta] with respect to the central facts of this case." *Tolan*, 572 U.S. 650 at 657. Indeed, the panel disregarded crucial facts and precedent and, in doing so, improvidently suggested that this court is the judge, jury, and executioner. The panel's opinion foments inconsistency in the caselaw and contributes to a confusing network of cases for district courts to navigate in reviewing qualified immunity claims. For clarity's sake, our circuit must comply with the rule of orderliness. Accordingly, I dissent from the denial of rehearing en banc.