# United States Court of Appeals for the Fifth Circuit

No. 24-40662

United States Court of Appeals
Fifth Circuit

**FILED**

June 3, 2025

Lyle W. Cayce
Clerk

Ricky Allen Frosch,

*Plaintiff—Appellee*,

*versus*

Colton Alsobrook,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:22-CV-236

_____

Before Stewart, Dennis, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Ricky Frosch sues Corporal Colton Alsobrook for excessive use of force. The district court denied Alsobrook's motion for summary judgment based on qualified immunity. Viewing the evidence in the light most favorable to Frosch, Alsobrook slammed Frosch's head into a wall while Frosch was compliant and restrained. Then, when Frosch later became unconscious, Alsobrook used his body weight to take Frosch to the ground.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40662

These uses of force resulted in a head laceration and broken collar bone. Accepting the district court's conclusions as to the genuineness of the factual disputes, Alsobrook used excessive force, and Alsobrook is not entitled to qualified immunity. We AFFIRM.

## I.    Factual Background

Officers were called to Frosch's home on a domestic disturbance call. The officers handcuffed and arrested Frosch. Frosh did not go quietly—he head butted and kicked the officers during the arrest, and during the ride to the station, he threatened the officers. The officers notified the jail that they were transporting a "combative" inmate. Once they arrived at the jail, the officers gave Alsobrook a rundown of Frosch's behavior.

Alsobrook helped move Frosch from the car to the jail during the booking process. Frosch was fully compliant and restrained during this process.[1] He did not threaten anyone, nor did he resist the officers.

When Alsobrook ordered Frosch to face the wall, Frosch did so. Alsobrook then pushed Frosch's head against the wall, causing a head wound.

While pressed against the wall, Alsobrook and other officers raised Frosch's hands above his head, restricting Frosch's breathing. Frosch explained, "I couldn't breathe and I was trying to gasp for air . . . and the lights went out and I was out." He woke up laying on the ground in the booking area. He later learned that while he was unconscious, Alsobrook

---

[1] Alsobrook has a different recollection of the events. However, this is an interlocutory appeal of a denial of qualified immunity at summary judgment, so the district court was required to resolve all disputed factual questions in Frosch's favor, *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 353 (5th Cir. 2014), and we must accept the district court's conclusions as to the genuineness of a material factual dispute, *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).

used his 300 pounds of body weight to take Frosch to the ground, breaking Frosch's collarbone.

Frosch sued Alsobrook, along with several other defendants, asserting, among other claims, excessive use of force. Alsobrook moved for summary judgment, asserting qualified immunity. The district court granted the motion as to all claims aside from the excessive-use-of-force claim, relying in part on a declaration filed by Frosch. Alsobrook now appeals.

## II.    Jurisdiction

We have jurisdiction to review an interlocutory appeal of the denial of qualified immunity. *Davis v. Hodgkiss*, 11 F.4th 329, 332 (5th Cir. 2021) (per curiam). This comes with jurisdiction to review the admissibility of evidence. *Mersch v. City of Dallas*, 207 F.3d 732, 734–35 (5th Cir. 2000).

## III.    Discussion

### A. Evidentiary Disputes

Alsobrook asserts that Frosch's declaration is barred by the sham affidavit doctrine and because it was disclosed after the discovery deadline. We review the district court's exclusion or admission of evidence for an abuse of discretion, subject to harmless-error review. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996).

#### 1.  Sham Affidavit

While we cannot consider the genuineness of the factual disputes (including the district court's determination of that in this context), we can and should review whether the evidence was admissible. *Mersch*, 207 F.3d at

734–35.[2] If statements in an affidavit "are so markedly inconsistent with a prior statement as to constitute an obvious sham," then the district court may refuse to consider the statements. *Winzer v. Kaufman County*, 916 F.3d 464, 472 (5th Cir. 2019) (per curiam) (quotation marks and citation omitted). The standard is high—the statements must be "inherently inconsistent." *Id.*

Alsobrook asserts that this high bar is met because Frosch previously testified that when he was ordered to face the wall, he did not know what remarks he was making, but his later declaration stated that he never threatened to kill or harm anyone at the jail. The district court concluded that these statements were not inherently inconsistent, so it did not apply the sham affidavit rule.

In this context, we defer to the district court's determination of the facts. But even if we reviewed it ourselves, we would not conclude that the district court abused its discretion. Frosch's earlier testimony is not inherently inconsistent with his declaration. Saying you don't remember your discussion but you know you did not discuss a certain item is not inherently inconsistent. *See Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) ("[T]he sham-affidavit doctrine is not applicable when discrepancies between an affidavit and other testimony can be reconciled . . . ."). We agree with the district court that the later declaration "constitutes a more expansive statement that clarifies, rather than conflicts with, prior testimony" (quotation omitted). The district court thus did not abuse its discretion.

---

[2] *See also Hardesty v. Cochran*, 621 F. App'x 771, 777 (5th Cir. 2015) (per curiam) (considering sham affidavit doctrine in an interlocutory appeal of the denial of qualified immunity).

### 2. *Untimely Disclosure*

Alsobrook next asserts that the declaration should be excluded because it was disclosed after the discovery deadline. However, the affidavit was created in response to Alsobrook's arguments at summary judgment, so it did not exist during discovery. Commonly accepted practice allows post-discovery disclosure of evidence created for summary judgment purposes. *See, e.g.*, *Cortes-Castillo v. One Time Constr. Tex. LLC*, No. 3:21-CV-2093, 2022 WL 4281601, at \*2 (N.D. Tex. Sept. 15, 2022) (Ramirez, J.) (collecting cases). This practice makes sense—a party does not know exactly what arguments the other party will raise in its motion until its brief is filed. *See id.* Accordingly, the district court did not abuse its discretion in admitting the declaration.

### B. **Qualified Immunity**

This case comes to us on an interlocutory appeal of the denial of qualified immunity, which cabins our review. We review de novo the denial of summary judgment based on qualified immunity to the extent it turns on issues of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019). To the extent the district court decision turned on the sufficiency of the evidence, we lack jurisdiction to review. *Kinney v. Weaver*, 367 F.3d 337, 346–47 (5th Cir. 2004) (en banc). In other words, we may "review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).

In analyzing qualified immunity, we ask two questions: First, whether the officer violated a constitutional right. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Second, whether the right was clearly established at the time of the violation. *Id.*

No. 24-40662

### 1. *Violation of a Constitutional Right*

Frosch brings an excessive-force claim against Alsobrook. Excessive force that violates the Fourth Amendment[3] requires showing "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012).

Frosch suffered an injury due to Alsobrook's use of force; however, Alsobrook asserts that his actions were reasonable. The reasonableness of Alsobrook's use of force depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022) (same).[4]

Accepting the district court's determination that a fact dispute exists, *Kinney*, 367 F.3d at 346–47, we conclude that Frosh has established a violation of a constitutional right. Frosch was restrained with handcuffs, and he was compliant during the booking process; he did not resist or threaten officers. Despite Frosch's compliance, Alsobrook pushed Frosch against the

---

[3] Before the district court, Frosch asserted in the alternative that the Due Process Clause applies, rather than the Fourth Amendment. *Compare Tyson v. Sabine*, 42 F.4th 508, 515 (5th Cir. 2022) (analyzing excessive force during arrest under Fourth Amendment), *with Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993) (analyzing excessive force against pretrial detainees under the Due Process Clause). On appeal, neither party asserts that the Due Process Clause, rather than the Fourth Amendment, applies in this context, so we assume the Fourth Amendment applies.

[4] We do not limit the inquiry to the danger the officer faced at the moment of the perceived threat. *Barnes v. Felix*, 605 U.S. ____ (2025).

wall and, once Frosch was unconscious, onto the floor with enough force to result in a head laceration and broken collarbone.[5]

Using force that causes a head laceration and broken collar bone to a restrained and compliant individual violates their right to be free from excessive force. It is "certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016). Use of force that inflicts injury on a "restrained and subdued" individual is unreasonable and excessive. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

### 2. *Clearly Established*

Having found a violation of a constitutional right, we next ask whether that right was clearly established. The answer is yes.

Indeed, we have held that "the test is clear enough" that the defendant "should have known that he could not forcefully slam [the plaintiff's] face . . . while she was restrained and subdued." *Id.* In *Curran v. Aleshire*, the plaintiff student struck the officer, so the officer slammed the student's head into a wall. 800 F.3d 656, 658 (5th Cir. 2015). A few minutes later and after the plaintiff was handcuffed, the officer slammed her head again. *Id.* Based on these facts, we had "little difficulty" in concluding qualified immunity did not apply; use of force against a non-resisting person is an "obvious" violation of the right to be free from excessive use of force. *Id.* at 661 (quotation omitted).

---

[5] Alsobrook's main arguments rely on the exclusion of the declaration discussed above. Having found no abuse of discretion in allowing the declaration, many of Alsobrook's qualified immunity arguments become irrelevant.

No. 24-40662

We thus conclude that our caselaw puts the right in question beyond reasonable debate, so Alsobrook is not entitled to qualified immunity based on our limited review.

## IV.    Conclusion

For the reasons above, we AFFIRM.