# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2022

Lyle W. Cayce
Clerk

No. 21-20654

Malea Byrd,

*Plaintiff—Appellee*,

*versus*

Johnny Cornelius; George Sweetin,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4473

Before Clement, Duncan, and Wilson, *Circuit Judges*.
Edith Brown Clement, *Circuit Judge*:

In the 2019 school year, Appellant police officers Johnny Cornelius and George Sweetin allegedly used excessive force in removing and arresting Malea Byrd, a student, from a high school basketball game. The district court denied summary judgment based on qualified immunity, finding a dispute of material fact regarding the events surrounding Byrd's arrest. The officers filed an interlocutory appeal challenging the district court's decision. Because our jurisdiction is limited to reviewing the materiality of any factual disputes identified by the district court, we DISMISS the appeal for lack of jurisdiction.

No. 21-20654

I

In the fall of 2017, Byrd was a student at Madisonville High School, which is operated by the Madisonville Consolidated Independent School District.  On November 14, 2017, Byrd, with some of her friends and family, attended a basketball game and decided to sit on the visitors' side of the gym. Officers Sweetin and Cornelius approached Byrd's group and asked them to move to the home side of the court. The teenagers complied with their request.

Later in the evening, Byrd and her cousin decided to go to the concession stand to buy some pizza. On the way, Kathleen Golden, an assistant principal at MHS, stopped Byrd and asked her about her nose ring. Following this encounter, Byrd rejoined her cousin in line at the visitors' concession stand. Golden then re-engaged with Byrd, admonishing her not to go to the visitors' section of the gym. Golden then asked Byrd to talk outside. During the conversation, Byrd became uncomfortable and decided to call her mother. Golden refused to speak to Byrd's mother and asked Byrd to leave the game. Because she did not have a coat and it was cold, Byrd refused to leave the building and waited inside of the gym for her mother to pick her up. The parties disagree regarding what exactly occurred at this point.

Byrd alleges that she was calmly talking to her mother on her cell phone near the doorway when Golden suddenly grabbed her shirt and forcefully pulled her. Byrd claims Golden then called Officers Cornelius and Sweetin over to assist her in removing Byrd from the game. Byrd alleges that Cornelius then violently handled her, spilled his hot coffee on her, ripped her shirt, and threw her to the ground. She then apparently felt Cornelius press his knee into her back and painfully twist her arm before placing her in handcuffs. Byrd alleges that while Cornelius undertook these actions,

No. 21-20654

Sweetin handled her very roughly and ripped her shirt. Byrd lastly claims that after Cornelius had her in custody, Sweetin kicked her arm and broke her cell phone by throwing it on the ground.

The officers' account of the event differs markedly. Cornelius and Sweetin claim they witnessed Byrd yell at and start a physical confrontation with Golden. Cornelius claims he asked Byrd to leave the gym but that she refused his order. Cornelius states he took Byrd by the arm to escort her from the building, but Byrd resisted by pulling away, thrashing, and kicking. They allege Byrd's elbow hit Cornelius on the cheek. Cornelius states it was at this point that he swept Byrd's legs out from under her, placed her on her stomach, and handcuffed her.

The officers turned Byrd over to the Madisonville Police Department, who eventually released her. Byrd then sought treatment at the Madisonville St. Joseph Hospital for injuries to her elbow and shoulder, bruising, and multiple lacerations. MHS ultimately expelled Byrd for assaulting a school administrator and police officers during the events of November 14, 2017.

Byrd filed suit against the Officers and the MCISD on November 13, 2019. On December 16, 2019, she submitted her Second Amended Complaint. The MCISD moved to dismiss the excessive force claims in her Second Amended Complaint, and the district court granted the motion. On April 14, 2021, Defendants moved for summary judgment premised on qualified immunity and on the merits of Byrd's due process claim.[1]

The magistrate judge found a genuine dispute of material fact between the evidence provided by the officers, namely their recollection of events and a short security video, and the evidence supplied by Byrd in her declaration.

---

[1] The district court's decision denying summary judgment on Byrd's due process claim is not reviewable on interlocutory appeal.

3

No. 21-20654

Specifically, the magistrate judge found the video to be unclear and wrote that it provided "no evidence at all that would support Defendants' arguments." Therefore, she turned to Byrd's declaration and the Defendants' declarations and found them to be in conflict regarding what happened on November 14, 2017. The magistrate judge concluded that these genuine issues of fact were material to the reasonableness of the force used against Byrd and recommended that the district court deny summary judgment. On November 17, 2021, the district court summarily adopted the magistrate judge's memorandum and recommendation. Defendant officers then timely filed their interlocutory appeal on December 8, 2021.

II

We have jurisdiction over the district court's denial of summary judgment, which is not a final decision, "only to the extent that the denial of summary judgment turns on an issue of law." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (internal quotation marks and brackets omitted). A district court's determination that a factual dispute exists in the record is not an issue of law that we can address during an interlocutory appeal. *See id*. at 346–47. When reviewing the district court's denial of qualified immunity on summary judgment, we "review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000). Consequently, we do not apply the standard of Federal Rule of Civil Procedure 56 but consider only whether the district court erred in its assessment of the legal significance of any factual disputes it found in the record on summary judgment. *See Kinney*, 367 F.3d at 348.

III

Cornelius and Sweetin argue that we should reverse the district court and grant them qualified immunity. The officers argue that we should disregard the district court's factual findings because the video evidence

conclusively contradicts Byrd's sworn statement and shows her striking Cornelius, threatening Golden, and kicking Sweetin. They also contend Byrd has failed in her burden to demonstrate that the officers violated clearly established law. Finally, Cornelius and Sweetin argue that their undisputed actions show they were objectively reasonable in arresting Byrd and that she, regardless, suffered only a *de minimis* legal injury. We address these arguments in turn.

## A. Excessive Force and Qualified Immunity

The Fourth Amendment creates a "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

The test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Instead, "its proper application requires careful attention to the facts and circumstances of each particular case, including" (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Thus, the overarching question is "whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)).

When a plaintiff sues police officers for alleged violations of her constitutional rights, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, courts generally engage in a two-part inquiry asking: first, whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right"; and second, "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, the order of this test is not mandatory, and "judges of the district courts and the courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first . . . ." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the [c]ourt, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting *Kinney*, 367 F.3d at 350).

Applying the above tests, the magistrate judge concluded first that there was a genuine dispute of material fact, which precluded granting summary judgment. Second, she found the *Graham* factors were sufficiently satisfied by Byrd's presumed true allegations to show her constitutional rights were clearly established and violated. Cornelius and Sweetin attack the memorandum and recommendation on both conclusions.

### 1. The Video Evidence

The magistrate judge found the officers' video to be unpersuasive. She concluded that due to the video's low quality and short duration—the footage does not depict the arrest or events shortly after the arrest—it does not clarify the factual dispute. Indeed, the magistrate judge claimed the video further reinforced her conclusion regarding the *Graham* factors because of Byrd's petite size.

The officers argue that the footage shows that the magistrate judge's view of the events is conclusively erroneous; therefore, they contend we should disregard her factual findings. Specifically, Cornelius and Sweetin claim the security video exhibits Byrd swinging her arm at Cornelius, attempting to bump Golden, and kicking Sweetin. They cite *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) in support of the proposition that appellate courts should rely on video evidence rather than the district court's factual findings when the two are in tension. Cornelius and Sweetin conclude that, considering Byrd's actions in the video, their use of force was objectively reasonable.

As requested by the Defendants, we have viewed the video in question numerous times. The footage is only fifteen seconds long and lacks audio.[2] It shows Byrd talking on her phone when the officers confront her, and

---

[2] The video seems to be a cell phone recording of security footage. The viewer can hear the person making the video during the recording.

Cornelius grabs her arm. In response, Byrd appears to swat at or strike Cornelius. The video becomes unclear as the officers and Byrd move their confrontation outside.

For us to review the genuineness of a factual dispute identified by a district court on interlocutory review, the video evidence must conclusively resolve the dispute of material fact. *See Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015). Although we find the video far more supportive of the officers' description of the events than the magistrate judge did, it does not conclusively resolve the factual disputes identified by the district court. The video is of low quality and fails to show Byrd's arrest, but contrary to the magistrate judge's report, the video plainly shows Byrd resisting as she was being removed from the gym's lobby. The video, however, does not depict when, or if, Byrd ceased resisting or what happened during the arrest. It also fails to show the events after Cornelius restrained Byrd. Therefore, under our standard of review on interlocutory appeal, we defer to the district court's findings that there is a genuine dispute of material fact regarding whether the officers used excessive force during the evening of November 14, 2017.

### 2. Clearly Established Right

Next, we address, taking the facts in the light most favorable to Byrd, whether the officers violated clearly established law when they allegedly used excessive force to arrest a student at a high school basketball game. Defendants first argue that the undisputed facts of this case warranted Byrd's arrest and that arrests inherently entail a certain amount of force. suspect's active resistance is a critical factor in the Fourth Amendment's "objective reasonableness" test. *See Graham*, 490 U.S. at 396. Accordingly, the Fifth Circuit's qualified immunity case law recognizes the need for officers to use reasonable force to subdue and handcuff suspects who hit them or otherwise resist. But the Fifth Circuit has also recognized that the reasonableness of any use of

force changes substantially once that resistance ends. *See Curran*, 800 F.3d at 661 ("[T]he force calculus changes substantially once that resistance ends.").

As stated above, we are bound on interlocutory review to the facts as decided by the district court on summary judgment. There, the magistrate judge identified genuine disputes of fact regarding whether Byrd was resisting arrest, when any resistance may have ceased, and whether the officers used excessive force during or after the arrest. Because of our limited review, we dismiss the officers' first argument as an improper attack on the genuineness of the district court's factual findings.

Cornelius and Sweetin next fault Byrd for failing to identify a case that clearly establishes that they could not forcefully remove and violently arrest a rowdy teenager at school. However, during the proceedings before the district court, Byrd cited *Curran v. Aleshire*, where we addressed a near identical factual situation. *See generally id*. In *Curran*, a school police officer confronted a teenage girl using her cell phone to call her mother on school grounds. *Id*. at 658. According to the school's policy, students were prohibited from using cell phones at school. *Id*. The officer reached for a lanyard on the student's neck to check her identification. *Id*. The student jerked away from the officer, so he allegedly threw her against the wall headfirst and handcuffed her. *Id*. After the student was in custody, the officer allegedly slammed her into a wall to dislodge her hidden cell phone. *Id*. The district court in *Curran* found a genuine dispute of fact regarding the officer's conduct and that the dispute was material as to whether the officer violated clearly established law. *Id*. at 661.

On interlocutory appeal, we held that the video and photographic evidence were inconclusive; therefore, we had to limit our review to the materiality of the factual dispute identified by the district court. *Id*. at 661–64. We

concluded that the dispute was material and based our logic on our decision in *Newman v. Guedry*, where we held that a reasonable officer should have realized utilizing force against a non-resisting plaintiff is an "obvious" case in which the *Graham* factors alone provide fair warning. *Id.* at 661–62 (citing 703 F.3d 757, 764 (5th Cir. 2012)).

Sweetin and Cornelius attempt to distinguish *Curran* by pointing to the video evidence in this case and the temporal differences between Byrd's allegations and the claims made by *Curran*'s plaintiff. We have already addressed the video evidence above and will not reiterate our analysis here. Regarding the alleged temporal differences, namely that the plaintiff in *Curran* was handcuffed and then allegedly suffered excessive force, the facts identified by the district court, in this case, do not support the argument that there was no temporal gap between the events that took place in the video and those that took place after the officers and Byrd move off camera. First, Byrd bases her excessive force claim on events from before, during, and shortly after Cornelius took her into custody. Second, Byrd alleges a specific temporal gap when Cornelius restrained her, and then Sweetin kicked her and broke her cell phone by throwing it on the ground. Thus, we reject the officers' attempts to distinguish *Curran*.

In support of their argument, the officers ask us to see this case as more analogous to *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012). In that case, a district court granted summary judgment in favor of officers where the plaintiff resisted arrest, and the police responded by tasering him. *Id.* at 625–26. However, the procedural posture of that case and its facts are distinct from the matter before us on interlocutory appeal. In *Poole*, the district court granted summary judgment, whereas the district court in this case denied summary judgment. *Id.* at 626. Accordingly, the applicable standard of review constrains our analysis to the materiality of the district court's

factual findings. This contrasts with *Poole*, where we could thoroughly interrogate the factual record. *Id.* We, consequently, do not see *Poole* as applicable.

Constrained to analyzing the materiality of the district court's factual findings, we agree with the district court that its identified disputes of fact are material to Byrd's excessive force claim. Applying the *Graham* factors to Byrd's allegations as we did in *Curran*, we see a teenager who claims she was not committing a crime, not a threat to others, and not resisting or attempting to flee the police when the officers allegedly used excessive force. We, therefore, agree with the district court that the officers' alleged conduct, taking the facts in the light most favorable to Byrd, clearly violated federal law.

### 3. *De Minimis*

The officers' final argument in support of reversing the district court's decision on summary judgment is that Byrd suffered no legally significant injury from her arrest. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (alterations in original) (citations and quotation marks omitted) "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (citation and quotation marks omitted). "Consequently, 'only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment.'" *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)). That is, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (citations and quotation marks omitted).

Here, Byrd alleges that during her encounter with the officers, she was so afraid and in so much pain that she believed the officers would kill her. She claims her physical injuries required a hospital to treat her for shoulder and elbow trauma that necessitated a sling. Byrd also alleges that the hospital treated her for severe bruising and multiple lacerations. These injuries, allegedly caused by unnecessary excessive force, satisfy the *de minimis* threshold.

## IV

The video evidence does not conclusively resolve the factual disputes identified by the district court in its summary judgment proceedings. These factual disputes are material to Cornelius' and Sweetin's qualified immunity defense. Thus, we DISMISS the appeal for lack of jurisdiction.