# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2023

Lyle W. Cayce
Clerk

No. 21-30752

CAMERON KEMP,

*Plaintiff—Appellant*,

*versus*

DONALD BELANGER, JR,

*Defendant—Appellee*,

CONSOLIDATED WITH

No. 21-30781

CAMERON KEMP,

*Plaintiff—Appellant*,

*versus*

CARLOS GLASS-BRADLEY; DANIEL ALBRECHT; RYAN HOLLEY; DONALD BELANGER,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:19-cv-799

---

Before CLEMENT, OLDHAM, and WILSON, *Circuit Judges*.

PER CURIAM:*

In this set of consolidated, *pro se* appeals, Cameron Kemp asks us to revive his suit against officers he claims violated his rights. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

**I**

Kemp appeals twice from the same case—a § 1983 action against Shreveport, Louisiana police officers Carlos Glass-Bradley, Daniel Albrecht, Ryan Holley, and Donald Belanger, Jr. Much of his ire is trained on two separate incidents.

First, Kemp claims that in 2018, the four officer defendants showed up at his house to arrest him on a "fake fugitive warrant" stemming from a domestic abuse complaint two years prior. Kemp explains that they then lied about smelling marijuana inside and began raiding the home. Finding nothing illicit of Kemp's, he says, the officers instead "planted 1 gram of marijuana" in the house and a full bag of marijuana in his neighbor's yard. He was arrested for possession of marijuana with intent to distribute. All of this, he says, was in retaliation for filing a complaint with the ACLU against the same four officers back in 2012.

The officers (and the evidence) tell a fuller tale. Arrest reports explain that at the time, the department was conducting a warrant round-up

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

2

No. 21-30752 (cons. w/ 21-30781)

operation. Kemp had an outstanding 2016 warrant for a prior charge of domestic abuse battery. When the officers arrived at Kemp's place, he closed the door in their faces and fled to the house's rear. Agents outside circled the house, where they heard a window open but saw no one exit. Instead, just across from the opened window, they found laying in the neighbor's yard a retail bag containing about a pound of marijuana. When Kemp eventually met the officers back at the door, they "observed a strong order of marijuana coming from inside" and saw a "jar of marijuana" sitting on Kemp's living room floor. The officers seized both the jar and the bag, and then arrested Kemp.

As regards this incident, the district court eventually adopted the magistrate judge's report and recommendation and granted summary judgment to the officers. The court found: that Kemp could not dispute evidence that his arrest warrant was properly issued; that seizure of the jar in the living room was permitted under the search-incident-to-arrest and plain-view exceptions to the warrant requirement; that Kemp lacked standing to contest any search or seizure of items in his neighbor's yard; and finally, that Kemp could not show that, save for his 2012 ACLU complaint, he would not have been arrested.

Kemp's tale continues with a second run-in with Belanger the next year. In early 2019, Kemp says, more than twenty officers amassed outside his home. An animal control officer then "lured [Kemp] to the street," where, he insists, he was ambushed by the crowd. Out of fear for his life, Kemp explains, he surrendered peacefully without resistance, posing no threat to the officers. But all the same, Kemp says, Belanger cuffed him and then swept his legs, sending him crashing to the ground.

The officers remember it differently. In their telling, they had a narcotics search warrant for Kemp's house, obtained after conducting two

3

controlled drug buys there. Fearful of Kemp's pit bulls, they employed an animal control officer to lure Kemp outside under the guise of an animal complaint. Once outside, Kemp became "irate" and "belligerent," repeatedly demanding to see a warrant. He "pulled away" from Belanger and "refused to comply" with instructions to sit. To prevent escape and ensure safety, Belanger swept Kemp to the ground "in the manner taught to [him] at the Shreveport Police Department."

In Kemp's telling, this event left him with myriad injuries, including bruised ribs and elbows, debilitating arm injuries, exacerbated breathing troubles, and back problems. Belanger instead insists that after he took Kemp to the hospital following the incident, Kemp was diagnosed only with rib pain and was prescribed ibuprofen. Scans showed no other injury.

The district court eventually granted Belanger summary judgment as to this 2019 incident too. On recommendation of the magistrate judge, the district court found that though Kemp *did* establish a genuine issue of material fact as whether Belanger "used unreasonable force by leg sweeping a handcuffed suspect" who may or may not have been resisting, his claim still fails because he could show only "minimal injuries."

Kemp now appeals both grants of summary judgment.

## II

This case involves two different standards. First, we review the district court's grant of summary judgment de novo, applying the same standard used by the district court. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view the evidence and draw all inferences in a light most favorable to the nonmovant; however, "[u]nsubstantiated assertions, improbable inferences, and unsupported

No. 21-30752 (cons. w/ 21-30781)

speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). The pleadings and other filings of pro se litigants are construed liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

Then, we review denials of a motion to amend, motion for sanctions, and motion for relief from judgment for abuse of discretion. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (motion to amend); *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 477 (5th Cir. 2002) (motion for sanctions); *Roberts v. Wal-Mart La., L.L.C.*, 54 F.4th 852, 854 (5th Cir. 2022) (per curiam) (motion for relief from judgment).

## A

We start with the straightforward. Upon review of the parties' briefs and the record, we find no reversible error in the district court's determination that Kemp failed to provide evidence demonstrating a genuine dispute of material fact as to his allegations against Officers Glass-Bradley, Albrecht, Holley, or Belanger regarding his 2018 arrest. We therefore AFFIRM that order.

## B

But the district court's order granting Belanger summary judgment regarding Kemp's 2019 arrest is a different story. Kemp alleges that Belanger violated his constitutional right to be free from excessive force. To show such a violation, Kemp must demonstrate "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quotations and citation omitted). Then, if he succeeds, Kemp must demonstrate that the law prohibiting Belanger's behavior was clearly established at the time of his conduct. *Ramirez v.*

*Martinez*, 716 F.3d 369, 377 (5th Cir. 2013). We judge the reasonableness of the force employed from the perspective of a reasonable officer at the scene, rather than with the "the 20/20 vision of hindsight." *Id.* (quotations and citation omitted).

In Kemp's sworn telling, he surrendered peacefully, and then was swept to the ground while handcuffed and nonresisting. Belanger instead insists that Kemp was irate, belligerent, and evasive, and that Belanger took him to the ground only after he didn't comply with several verbal commands. In these different tales, the district court found a dispute of material fact over whether Kemp was resisting and thus over whether Belanger's use of force—sweeping to the ground a handcuffed, potentially nonresisting suspect—was reasonable.

Belanger did not challenge this finding on appeal.[1] Instead, Belanger hangs his cap on the district court's second conclusion: that Kemp failed to show his injuries were more than de minimis.

But that conclusion was error. As we've explained, though "a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022) (quotations and citation omitted). "Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de

---

[1] What Belanger does say, however, is that the *magistrate judge* correctly determined that his force was not unreasonably excessive under the circumstances. This argument relies entirely on Belanger's evidence in support of his motion, and fails to grapple with Kemp's sworn account or with the district court's actual conclusion that Kemp established a genuine dispute of material fact as to the reasonableness of Belanger's force.

No. 21-30752 (cons. w/ 21-30781)

minimis injuries only." *Id.* (quotations and citation omitted). Thus, "as long as a plaintiff has suffered *some* injury, even relatively insignificant injuries . . . will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (emphasis added) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quotations omitted)).

Here, even though Kemp did not prove the extensive injuries he claimed, he still proves *some* injury. He was diagnosed with rib pain and "bony tenderness," for which the doctor prescribed ibuprofen. Though this is unquestionably no great injury, it is nonetheless actionable if resulting from unreasonable force. Should Belanger's force be excessive given the circumstances—a question we do not answer now—then Kemp's injuries, however mild, can sustain his claim. To hold otherwise was error.[2]

We therefore AFFIRM the grant of summary judgment to Glass-Bradley, Albrecht, Holley, and Belanger regarding Kemp's 2018 arrest. But we REVERSE the grant of summary judgment to Belanger with respect to Kemp's 2019 arrest, and REMAND this matter for further proceedings consistent with this opinion.

---

[2] The district court did not address whether Belanger's conduct, should it be found unreasonable, violated clearly established law. But it (and Kemp) pointed to *Ramirez v. Martinez*, where we found it clearly established that an officer cannot "forcefully slam[] an arrestee's face . . . when the arrestee was handcuffed and subdued." 716 F.3d at 379 (discussing *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)). We don't think slamming an arrestee's entire body as opposed to his face makes the unreasonableness of the force any less clearly established.

Andrew S. Oldham, *Circuit Judge*, dissenting:

The plaintiff in this qualified-immunity case does not specify any Supreme Court holding that clearly established the law and thus put the constitutionality of Officer Belanger's conduct "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotation omitted). Therefore, I'd affirm.