# United States Court of Appeals
# for the Fifth Circuit

————————

No. 22-30489
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
April 21, 2023

Lyle W. Cayce
Clerk

Chance Dwayne Beroid,

>*Plaintiff—Appellant*,

*versus*

Christopher LaFleur, *Jefferson Davis Parish Deputy Sheriff*;
Ferroll Leblanc, *Jefferson Davis Parish Deputy Sheriff*; Naquan
Senegal, *Jefferson Davis Parish Deputy Sheriff*,

>*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-516

————————————————————

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:[*]

 This appeal arises from Chance Dwayne Beroid's ("Beroid") suit against Officers Christopher LaFleur, Ferroll Leblanc, and Naquan Senegal (collectively "the officers") for allegedly violating his Fourth Amendment

—————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

rights. Because Beroid failed to plead facts sufficient to survive a motion to dismiss, we AFFIRM.

## I. BACKGROUND

According to Beroid's complaint[1], he alleged that Officers LaFleur, Leblanc and Senegal were dispatched to his parents' house after receiving a call from his fiancée about an argument the two were having. After the situation settled down, Beroid's fiancée left, and he remained at his parents' house where he intended to stay for the evening. Beroid alleged that the officers remained outside for thirty to forty-five minutes before approaching the door a second time. Beroid's mother answered and was asked if he was still home. He came to the door and Officer LaFleur ordered him to grab his shoes and to come with them because there was a warrant for his arrest. He denied the existence of a warrant and refused to go with the officer. He retreated further into the house. Beroid alleged that the officers then "barged into the house" and attempted to grab him by the shirt. His shirt slipped off which prompted him to step a few feet further into the house.

Beroid alleged that moments after entering the house and without warning, Officer LaFleur shot him with a taser which forced him to drop to the ground. Once on the ground, Officer LaFleur demanded that Beroid put his hands behind his back. Officer Senegal told him that if he did not comply with Officer LaFleur's instruction he would "light [him] up again." As Beroid was handcuffed he explained that the charges underlying the warrant

_____

[1] As part of his complaint, Beroid included camera footage taken from the officers' body cameras, dashboard camera, and backseat camera. Because the district court's characterization of the video footage is at issue in this case, the facts summarized in this section come directly from the complaint. However, we note that there are a number of inconsistencies between the facts as alleged in the complaint and the video footage.

were dropped and repeatedly asked what the charges were for and from what year. Officer LaFleur eventually responded that he did not know the details about the charges but that the warrant was confirmed by the Jennings Police Department. Beroid was taken to the Sherriff's Office where he met with EMT personnel to be treated for the injuries he sustained during his arrest. He alleged that he overheard the officers tell the EMT personnel that he had been "fighting" and that he overheard conversation between the officers corroborating "a false version of the incident."

Beroid sued all three officers under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment right "to be secure in his person from unreasonable seizure through excessive force" and his "constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement." The officers filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted the officers' motion and determined that Beroid failed to show that the officers acted unreasonably in their use of force. It also determined that the officers were entitled to qualified immunity. This appeal ensued.

## II.   STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss de novo. *Butts v. Aultman*, 953 F.3d 353, 357 (5th Cir. 2020). When reviewing a motion to dismiss, we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *See Alexander v. City of Round Rock*, 854 F.3d 298, 303 (5th Cir. 2017). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Butts*, 953 F.3d at 357 (quoting *Masel v. Villarreal*, 924 F.3d 734, 743 (5th Cir. 2019)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.    DISCUSSION

Beroid presents four issues on appeal.  He asks us to decide whether the district court erred in: 1) relying on its own characterization of the video footage at the pleadings stage; 2) granting the motion to dismiss and determining qualified immunity was applicable; 3) determining that the complaint failed to set forth a prima facie Fourth Amendment claim and otherwise overcome the officers' qualified immunity claim; and 4) declining to exercise supplemental jurisdiction over Beroid's state law claims.  We address each in turn.

### A.    *Fourth Amendment Claims*

Beroid argues that Officer LaFleur shot him with a taser "without warning and without attempting to use de-escalation skills, negotiations, or commands."  He adds that Officers Senegal and Leblanc "stood idly by." He contends that this violated his Fourth Amendment rights because "the officers acted unreasonably excessively [sic] [.]"

To advance a successful claim under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir.2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).  There is no dispute that the officers acted under the color of state law when they effectuated Beroid's arrest. Beroid's arguments focus on prong two, that the officers violated his clearly

established Fourth Amendment "right to be free from excessive force."[2] To prevail on an excessive force claim under the Fourth Amendment, Beroid "must establish '(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

With respect to the first prong, "although a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022) (quoting *Alexander*, 854 F.3d at 309) (citations and quotation marks omitted). "Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de minimis injuries only." *Id.* (citation and quotation marks omitted).

Beroid claimed he suffered burn marks on his arm and back from being tased as well as anxiety and other psychological injuries and psychiatric distress. His injuries are cognizable only if the officers' use of force was unreasonable. *See Ratliff*, 948 at 287.

In determining whether the use of force was reasonable, we must assess the totality of the circumstances. *See Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012); *see also Massey v. Wharton*, 477 F. App'x. 256, 262 (5th Cir. 2012) (per curiam) (analyzing several important factors including

---

[2] *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness' standard, rather than under a substantive due process' approach") (internal quotation and citation omitted).

"whether he [was] actively resisting arrest or attempting to evade arrest by flight") (internal citation omitted).[3]  Further, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation and quotation marks omitted).  Thus, not every push or shove violates the Fourth Amendment. *Id.* (internal citation and quotation omitted).  Instead, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id* at 396–97 (internal citation and quotation marks omitted).

Beroid argues that Officer LaFleur acted unreasonably when he tased him because at that point in time he was not aware that he was under arrest because officers did not use the precise phrase "you are under arrest" and he was not warned that he would be shot with a taser. Our cases involving the use of a taser to effectuate an arrest focus on whether the officers faced active resistance.  *See Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (citing *Pratt v. Harris Cnty.*, 822 F.3d 174, 182 (5th Cir. 2016)) ("[A] suspect's active resistance to arrest may justify this degree of force.").  For example, in *Poole v. City of Shreveport*, in affirming the district court's grant of summary judgment we determined that the use of a taser during an arrest was

---

[3] *See Graham*, 490 U.S. at 396 ("Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), [ ] its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.") (emphasis added).

reasonable because the plaintiff verbally and physically resisted arrest. *See* 691 F.3d 624, 631–32 (5th Cir. 2012). There, we concluded that the officers were entitled to use "some degree of physical coercion or threat thereof to" effectuate the seizure to execute the arrest warrant including the use of a taser if the situation so requires. *Id.* at 627–28 (quoting *Graham*, 490 U.S. at 396).

We also have caselaw emphasizing that reciting "you're under arrest" is not necessary to put a suspect on notice that he is being arrested and resistance can be met with reasonable force. In *Tucker v. City of Shreveport*, we reversed the district court's denial of summary judgment and determined that the level of force that officers used during the plaintiff's arrest was reasonable. 998 F.3d 165, 185 (5th Cir. 2021). We further concluded that even though the officers did not utter the words "you are under arrest," lights and sirens coupled with being told to put his hands behind his back were enough to put the plaintiff on notice that he was being arrested. We determined that by refusing to pull over and then physically and verbally resisting arrest, the officers were reasonable in their use of force to take him down to the ground to complete the arrest. *Id.* at 178–79. By contrast, there are a number of cases where we have determined excessive force was used when officers tased a suspect offering only passive resistance or no resistance at all.[4] This is not such a case.

Mindful that we must accept all well-pleaded facts as true and construe those facts in the light most favorable to Beroid, *see Alexander*, 854

---

[4] *See e.g., Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018) (reversing dismissal of claims against officer because evidence including video evidence showed that the plaintiff was not resisting and was instead complying with officers during arrest therefore use of a taser was excessive force); *Ramirez v. Martinez*, 716 F.3d 369, 380 (5th Cir. 2013); *Newman v. Guedry*, 730 F.3d 757, 763 (5th Cir. 2022) (holding that use of a taser was unreasonable because the plaintiff's behavior did not rise to the level of "active resistance").

F. 3d at 303, we hold that Beroid has not pleaded facts establishing excessive force. First, he argues that he was never told that he was under arrest, but his complaint alleges that Officer LaFleur told him to grab his shoes because there was a warrant for his arrest. This was sufficient to put Beroid on notice that he was being arrested. *See Tucker*, 998 F.3d at 185.

Next, he argues that Officer LaFleur violated his Fourth Amendment right when he shot him with a taser without warning even though he "was not committing a crime, was unarmed, and was not actively resisting arrest." We disagree. Beroid was on notice that he was being arrested therefore his refusal to comply and his subsequent retreat into the house was active resistance. As we have repeatedly held, the use of a taser is a reasonable level of force when a suspect is resisting arrest. Thus, Officer LaFleur's use of force was reasonable in this situation. *See Stone*, 993 F.3d at 384; *see also Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013) (per curiam) ("[W]here a suspect resists arrest or fails to follow police orders, officers [did] not violate his right against excessive force by deploying their tasers to subdue him.").

Beroid further argues that the district court relied on its own characterization of the video footage in reaching its decision to dismiss the case. We disagree. But regardless, setting aside the video footage and focusing only on the language in the amended complaint, as we have done here, we hold that Beroid has failed to establish that there was use of excessive force thus his injury was de minimis. *See Byrd*, 52 F.4th at 274.

Beroid also argues that Officers Leblanc and Senegal violated his constitutional rights when they "stood idly by and otherwise made no attempt to use other, less forceful tactics to arrest [him]." However, Officers Leblanc and Senegal did not deploy their taser and given that there were no constitutional right violations for them to be aware of and protect, they are

also not liable under the theory of bystander liability. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (holding "that [ ] officer[s] who [were] present at the scene and [did] not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983").

### B. *Qualified Immunity*

To determine whether qualified immunity applies, we engage in a two-part inquiry "asking: first, whether taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right; and second, whether the right was clearly established." *Byrd*, 52 F.4th at 271 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (quotation marks omitted)). We have repeatedly denied qualified immunity "in cases in which 'officers face verbal resistance but no fleeing suspect.'" *Tucker*, 998 F.3d at 175 (quoting *Bone v. Dunnaway*, 657 F. App'x 258, 263 (5th Cir. 2016) (per curiam)). Since Beroid does not contest the legality of his arrest, we only focus on the officers' use of force during his arrest. *See Poole*, 691 F.3d at 629.

Beroid argues that his complaint demonstrates that the officers violated his Fourth Amendment rights and the only reason the motion to dismiss was granted was because the district court, adopting the recommendation of the magistrate judge, substituted the facts alleged in the complaint with its own characterization of the video footage. He argues that but for this error, the officers would not be entitled to qualified immunity.

We are not persuaded by this argument because we have routinely held that "on a motion to dismiss, the court is entitled to consider any exhibits attached to the complaint, including video evidence." *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); *Tucker*, 998 F.3d at 170 (determining officers were entitled to qualified immunity "because there [was] video and audio recording of the event, [and] we are not required

to accept factual allegations that are blatantly contradicted by the record") (internal quotation marks and citation omitted); *see also Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("The court may [ ] also consider documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [his] claim.") (internal quotation marks and citation omitted). Beroid elected to attach video footage to his complaint and directed the court's attention to that footage throughout his complaint but now argues that the district court mischaracterized it. We disagree. After reviewing the video footage to determine the merits of this argument, we conclude that the district court's characterization of the footage was accurate. The footage does contradict Beroid's claims that he did not resist arrest. Thus, the district court did not err in considering this video footage. *See Tucker*, 998 F.3d at 170.

Because we have already determined that Beroid has failed to establish a constitutional violation, we hold that the district court did not err in determining that the officers were entitled to qualified immunity in this case. *See Byrd*, 52 F.4th at 271.

## C. *Denial of Supplemental Jurisdiction*

Because Beroid's § 1983 claim was properly dismissed and there are no other federal claims, we hold that the district court did not abuse its discretion by declining extension of supplemental jurisdiction to Beroid's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction").

## IV. Conclusion

For these reasons, we AFFIRM the district court's order granting the officers' motion to dismiss and dismissing Beroid's suit.