# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2023

Lyle W. Cayce
Clerk

No. 21-30672

THE INTESTATE SUCCESSION OF CHRIS ANTHONY JOSEPH; MICHELL STRICKLAND, *Individually and in her capacity as the duly confirmed natural tutrix of* C.J., A.J., JR., M.J., and M.J.; PASSION TAPANGE JOSEPH,

*Plaintiffs—Appellants*,

*versus*

SHERIFF JOSEPH P. LOPINTO, III, *in his official capacity as the duly elected Sheriff of Jefferson Parish*; NARCOTICS DETECTIVE ALLEN DOUBLEDAY, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE BEN JONES, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE CARMOUCHE, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE WIBLE, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*,

*Defendants—Appellees*,

LESHONNA MONIQUE STEPTORE, *Individually and in her capacity as the natural tutrix of* D.R., *a minor child*,

*Plaintiff—Appellant*,

*versus*

JOSEPH P. LOPINTO, *in his official capacity as the duly elected Sheriff of Jefferson Parish*,

*Defendant—Appellee*,

_____

DAVIRI OSEANUS ROBERTSON, INTESTATE SUCCESSION OF; DARRELYN SMITH, *Individually and in Her Capacity as the Natural Tutrix of* D.R.; KESHAUN MORGAN, *Individually and in Her Capacity as the Natural Tutrix, a minor child*,

*Plaintiffs—Appellants*,

*versus*

SHERIFF JOSEPH P. LOPINTO, III, *in his official capacity as the duly elected Sheriff of Jefferson Parish*; NARCOTICS DETECTIVE ALLEN DOUBLEDAY, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE BEN JONES, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE CARMOUCHE, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*; NARCOTICS DETECTIVE WIBLE, *Individually and in his capacity as a duly sworn officer employed by the Jefferson Parish Sheriff's Office*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-11268, 2:20-CV-1006,
2:20-CV-841

_____

No. 21-30672

Before Smith, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

During a narcotics investigation, Jefferson Parish Sheriff's Office (JPSO) law enforcement officers shot and killed Chris Joseph and Davari Robertson. Plaintiffs, three groups of individuals seeking recovery on behalf of the decedents and their heirs, contend that the officers used excessive force in violation of the Fourth Amendment. Defendants interposed the defense of qualified immunity and moved for summary judgment, which the district court granted. Plaintiffs appeal, and we affirm.

## I.

In March 2019, members of the JPSO Special Investigations Bureau used a cooperating individual to organize a heroin transaction with Joseph. Joseph and the individual agreed to meet at an IHOP Restaurant in Gretna, Louisiana. The JPSO unit set up surveillance in the restaurant's parking lot and waited for Joseph to arrive. A security camera recorded what happened next:

Joseph and Robertson, who was not a target of the investigation, arrived at the appointed time, parking at 9:01:12 p.m. Joseph was in the driver's seat and Robertson was in the front passenger's seat as the narcotics unit converged in several unmarked vehicles. Within seconds, officers had used their vehicles to box in Joseph's car on two sides. The officers, all in plainclothes, exited their vehicles with guns drawn and surrounded Joseph's vehicle. Though the video is unclear on this specific point, Detective Jones testified that he positioned himself at the rear of Joseph's vehicle, between it and a JPSO vehicle. The officers then directed Joseph and Robertson to step

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

out of the vehicle; they did not comply.  At 9:01:27 p.m., Joseph put the vehicle in reverse.  Around the same time, the officers opened fire on the vehicle. Joseph and Robertson were both shot; Detective Doubleday was also shot, evidently by another officer.  Joseph died at the scene, while Robertson was pronounced dead on arrival at the hospital.  Detective Doubleday survived.

Plaintiffs sued under 42 U.S.C. § 1983, alleging that the officers' actions constituted excessive force and asserting a claim for municipal liability.  Defendants moved for summary judgment, arguing that they were entitled to qualified immunity.  The district court, relying on the video, found that Joseph reversed the car in the direction of the police officers before the officers fired.  Based on that finding, the district court held that there was no genuine fact dispute that the JPSO officers' use of force was not excessive under the circumstances, such that there was no constitutional violation. Plaintiffs' claims thus failed at the first step of the qualified immunity analysis, and the court did not reach the second, i.e., whether the law bearing on Plaintiffs' claims was clearly established.  The court granted summary judgment to Defendants.  Plaintiffs now appeal.

## II.

Generally, "[w]e review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) (citation and quotation marks omitted).  But "a qualified immunity defense alters the usual summary judgment burden of proof."  *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021) (citation and quotation marks omitted).

"Qualified immunity shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 391 (citation and quotation marks omitted). "[T]he plaintiff has the burden to negate the defense once it is properly raised." *Id.* at 392 (citation omitted). "Thus, once the defense is invoked, the plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law." *Id.* (cleaned up).

The district court's ruling for Defendants largely turned on its determination that the vehicle reversed before the officers fired. That makes sense. This court's caselaw is clear that officers who are endangered by a weaponized vehicle may properly, within the strictures of the Fourth Amendment, use deadly force to neutralize the threat. It follows that this appeal primarily turns on (A) whether the district court was correct, based on the summary judgment record, that Joseph's vehicle moved before the officers fired. Plaintiffs actually differ on this point, as discussed *infra*. They raise three additional issues, namely whether: (B) the officers identified themselves and commanded Joseph and Robertson to exit the vehicle before Joseph reversed the vehicle; (C) Joseph reversed the vehicle in the direction of an officer positioned at the rear of the vehicle; and (D) the fact that Robertson was merely a passenger in the vehicle bears on our analysis. We examine each of these issues in turn and then analyze Plaintiffs' excessive force claims in their light.

## A.

First, and foremost, whether Joseph reversed the vehicle before the officers fired. The district court relied in part on the security video in finding that Joseph reversed the vehicle first, and two of the three groups of Plaintiffs concede the district court's view of the evidence. But the third group of

Plaintiffs contends that the officers fired first.  While the district court determined that the video of the incident provided a clear answer, we find the video inconclusive on this question.  Nevertheless, the district court did not err in granting judgment on this basis because Plaintiffs offer nothing to counter other evidence, including officers' testimony, that demonstrates Joseph reversed the vehicle before they fired.

The Plaintiffs who contest this point rely solely on the video to support their position that the officers fired before Joseph reversed the car.  Or, they say, at the least, there is a material fact dispute precluding summary judgment because the video is inconclusive.  But the video does not move the needle in either direction, even under the latter theory, because it supports neither side's version of events.  On the other hand, two of the officers testified in their depositions that the vehicle moved first.  Likewise, the JPSO investigative report states that the officers fired only after the vehicle moved.  The video does not contradict this definitive evidence that the vehicle reversed first, and thus is insufficient to create a genuine dispute of material fact.  *See Kokesh*, 14 F.4th at 392; *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]").

**B.**

Plaintiffs similarly fail to proffer evidence that the officers did not identify themselves as law enforcement and order Joseph and Robertson to exit the vehicle.[1]  By contrast, the officers consistently testified that they identified themselves and ordered Joseph and Robertson to step out of the

---

[1] Plaintiffs alternatively characterize this issue as whether Joseph and Robertson heard the officers.  But this point is irrelevant, as "we consider only what the officers knew at the time of their challenged conduct."  *See Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

vehicle before firing.  One officer testified that as he was getting out of his vehicle, he heard another officer shout: "[P]olice, show me your hands.  Shut it down."  Another officer testified that he got out of his vehicle yelling "show me your hands.  Show me your hands, or turn off the vehicle."  He swore that he "could hear everyone else saying the same thing."  Plaintiffs cite to no evidence to the contrary, and because the video does not include audio, it cannot support their version of events.  Thus, the district court correctly determined there was no genuine dispute of material fact as to this issue.  *See Kokesh*, 14 F.4th at 392; *see also* Fed. R. Civ. P. 56(c)(1)(A).

## C.

Likewise, Plaintiffs fail to point to any evidence creating a fact dispute regarding whether there was an officer behind Joseph's vehicle when he reversed it.  Plaintiffs posit that if there was no officer behind Joseph's car, it is debatable whether Joseph was actually "weaponizing" his vehicle and thus questionable whether Defendants' use of deadly force was justified.  The video is admittedly unclear on this point.  But one of the officers testified that he was "directly in between [a police vehicle] and [Joseph's vehicle]."  The same officer testified that he "remember[ed] the vehicle coming straight towards [him]" as Joseph reversed the vehicle.  As above, because Plaintiffs offer no contrary evidence, there is no genuine factual dispute frustrating summary judgment.  *See Kokesh*, 14 F.4th at 392; *see also* Fed. R. Civ. P. 56(c)(1)(A).

## D.

Finally, the Robertson Plaintiffs contend that the excessive force analysis is different as to Robertson because he was only a passenger in the vehicle, so he could not control what Joseph did as the driver.  Regardless of their argument's logical appeal, it is foreclosed by precedent.  In cases where a vehicle with a passenger in it is deployed as a weapon, we examine the

actions of the *vehicle*, not the driver. *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 412–15 (5th Cir. 2009). Thus, though a tragic circumstance, it is legally immaterial that Robertson was merely a passenger in Joseph's car.

## III.

Weighed against the record discussed above, the qualified immunity analysis comes into clear focus. And we focus only on whether Defendants' "conduct . . . violate[d] clearly established . . . constitutional rights," *Kokesh*, 14 F.4th at 391, namely Joseph's and Robertson's Fourth Amendment "right to be free from excessive force during a seizure," *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).[2] To sustain an excessive force claim, a plaintiff "must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022) (citation and quotation marks omitted). Courts weigh the *Graham* factors to assess whether the force used was reasonable: (1) "'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 270 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The "overarching question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* (citation and quotation marks omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene[.]" *Id.* (citation and quotation marks omitted).

---

[2] We pretermit discussion of the second prong of the qualified immunity analysis, whether the law governing Defendants' conduct was clearly established, because, as discussed above the line, Plaintiffs have not established a constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the officers' use of force was reasonable under the *Graham* factors. Heroin distribution is "certainly [a] serious offense[]." *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) (holding that cocaine distribution is a serious offense such that "the severity of the crime at issue weighs in favor of the officers"). And when Joseph threw his car into reverse, he "weaponized" it against the JPSO personnel at the scene—and against others who were in the vicinity. His maneuvering of the vehicle also indicated that its occupants were both "actively resisting arrest or attempting to evade arrest by flight." *See Byrd*, 52 F.4th at 270 (citation omitted). Faced with these threats (which materialized within seconds of when the encounter began), the officers' actions were reasonable under the *Graham* factors. *See Hathaway v. Bazany*, 507 F.3d 312, 322 (5th Cir. 2007) (holding that a police officer was justified in using deadly force against a car accelerating toward him). Because the officers' actions were reasonable, the use of force was not excessive, and there was no constitutional violation.[3]

Mindful of our duty to assess "the reasonableness of a particular use of force . . . from the perspective of a reasonable officer on the scene," *Byrd*, 52 F.4th at 270 (citation and quotation marks omitted), we hold that the district court did not err in granting Defendants summary judgment on the basis of qualified immunity.

AFFIRMED.

---

[3] Plaintiffs' municipal liability claims fail because there is no underlying constitutional violation. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013).